AUSTIN DUNHAM AND GEORGE BEACH, JR., RESPOND-ENTS, *v.* STEPHEN C. WILLIAMS AND GEORGE H. PARKER, APPELLANTS.

*Ejectment—Title to closed road—Adjacent owners—Colonial laws.*

The rule of civil law which prevailed in all the colonial provinces of the Dutch was, that no one could claim a present or reversionary title in the soil of a public highway, on the ground that he was the grantee of all lands through which it was laid out.

Plaintiffs owning premises on the west side of the road formerly leading from Jamaica and Flatbush to Brooklyn cannot maintain ejectment for the recovery of the abandoned road-bed, because under the rule of law above stated the legal title to said bed does not accompany the transfer of title of the premises adjoining said road on the west side thereof.

APPEAL from the Supreme Court. This was an action of eject-ment for the recovery of a portion of the bed of an abandoned road which formerly led from Jamaica and Flatbush to the Brook-lyn Ferry.

The cause was tried at the Kings Circuit, and a verdict was di-rected for the Plaintiffs. The material facts were undisputed, and they are sufficiently stated in the opinion. The judgment on the verdict having been affirmed, the Defendants appealed to this Court.

*John E. Parsons* for Appellants.

*John H. Reynolds* for Respondents.

PORTER, J.—The Plaintiffs owned the premises on the west side of the road, and they claimed half the road-bed on the ground that, in the grants through which they deduced title, their lands were bounded on the highway.

It is a familiar rule of law that, in such a case, the adjacent pro-prietor is primâ facie owner of the soil, subject to the easement in favor of the public. It is founded on the rational presumption that the ground was originally taken from the adjoining owners, and for the sole purpose of being used as a thoroughfare (Stiles *v.* Curtis, 4 Day, 333, 336; Woolrych on Ways, 5).

14

A deed bounded on a highway, primâ facie carries the title of the grantee to the centre of the road, on the assumption that the grantor owns it; but when it appears that it was in fact owned by another, the terms of the deed are satisfied by a title extending to the roadside.

The presumption in favor of an adjacent proprietor, and of his successors in interest, is not a præsumptio juris et de jure, but yields to other evidence displacing the grounds upon which it rests. The effect, in this respect, of a given deed depends on the actual state of the title. A conveyance bounded on a village street would ordinarily include the soil to the centre; but it would be otherwise with a like conveyance bounded on one of the streets in the upper part of the city of New York, where the right of soil is vested in the public authorities. So, the same language in a deed of land bounded on a river, which would embrace half the bed of a stream not navigable, would carry the title in a different case only to the line of low-water mark.

In the present instance, the presumption in favor of the adjacent owners was repelled by affirmative and decisive proof that the fee of the road-bed was not vested in them or in the parties through which this title was deduced. The highway was ancient. It was laid out when New York was a province of the States-General, and when it was in the possession of the original settlers, and subject to the dominion and laws of the Dutch government. It was originally an Indian path from Midwout, now Flatbush, to the crossing afterward known as the Brooklyn Ferry. In 1634 the Dutch settled in Flatbush, which afterward became the county seat of Kings. In 1654 they erected a church, at which the people of Brooklyn were in the habit of worshipping until ten or twelve years afterward, when they completed their own. In 1656 the court-house was erected; and these, and the other old buildings at Flatbush, fronted on the road in question. The church at Brooklyn was built, in accordance with a common practice of the colonists, in the centre of the highway; thus serving as a convenient post of observation for sentinels, and a rallying-point for defence in case of Indian hostilities.

It is entirely clear from the evidence that this was the road, and the only road, between Flatbush and Brooklyn. The land belonged to the government, which enlarged an Indian foot-path through the forest to the dimensions of a modern highway, and thus opened between two of its settlements a convenient avenue of communication, which continued to serve every essential purpose for the two succeeding centuries.

It was laid out before the settlement of the intermediate lands, and where there were no adjacent proprietors. It was recognized by a colonial statute in 1721 as having been in use, as it then was, "for at least these sixty years last past" (1 Van Schaick, 125). It was a familiar and ancient landmark to the Dutch government. Governor Peter Stuyvesant described it as "the highway," in a grant made by him in 1654. In the patent to Jochem Garritson Cockes, granted in 1656, it is spoken of as "the public highway twenty-five rods east of the burying-ground." In the patent issued from the office of the Secretary of State to Bruyn Barentsen, in 1658, it is described as the "great road" between Flatbush and Brooklyn. This was six years before the capitulation of the Dutch, who made it a condition of surrender that they should remain in enjoyment of their own customs concerning their inheritance, and that all differences of contracts and bargains, made before the 27th of August, 1664, should be determined according to the manner of the Dutch.

The highway having been laid out long prior to the capitulation, the title of the government to the road-bed was absolute. This was the rule of the civil law which prevailed in all the colonial provinces of the Dutch. Every grant was subject to this paramount and absolute royalty, and no one could claim a present or reversionary title in the soil of a public highway, on the ground that he was the grantee of the lands through which it was laid (Hoffman's Treatise on the Corporation of New York, 263, 265, 291, and authorities there cited; Mr. O'Conor's argument in Wetmore *v.* Story, 22 Barb. 433, 439; Renthorp *v.* Bourg, 4 Martin's Louisiana R. 97, 137).

It is evident that this was so understood by all parties. On the

assumption that the title of the Dutch government in the town highways passed to the British crown, we find them granted by Governor Dongan, in his subsequent letters patent, to the free-holders representing the corporation of Brooklyn. In 1721 this particular road was protected from threatened encroachment by a colonial law, which declared that it should be and remain the common road or King's highway forever, after the same manner and regulations as it has been heretofore (1 Van Schaick, 125). In 1809 a law was passed authorizing the conversion of the highway into a turnpike road; and it appears by the inquisition of the appraisers appointed to assess the damages of the owners, that the adjacent proprietors made no claim, but the damages were assessed in favor of the corporate authorities of Brooklyn and Flatbush, as the claimants of the fee in the road-bed.

Twenty-six years before the commencement of this suit, the turnpike company, under the authority of an act of the Legislature, and on the assumption that it had acquired title to the road, transferred it to the Brooklyn and Jamaica Railroad Company. That corporation, under like legislative authority, sold it to other parties, through whom the Defendants claim by intermediate conveyances. Though the use of the road for highway purposes had been discontinued five years before this action was brought, the Plaintiffs seem to have made no claim to it until a year or more after the property was purchased, inclosed, and built upon by the Defendant Williams.

We think the presumption in favor of the Respondents, from the fact that these lands adjoined and were bounded on the road, is clearly repelled by the evidence, and that their claim of title must therefore fail. This conclusion on the vital point in the case renders it unnecessary to consider the question whether an absolute fee was acquired by the turnpike company through the assessment proceedings under the highway acts. As it is clear that the Plaintiffs cannot recover, we are not called on to express an opinion as to the validity of the Defendants' title.

The judgment should be reversed, and a new trial should be ordered.

All the Judges concurring, except Hunt, J., and Davies, Ch. J., who expressed no opinion,

Judgment reversed, and a new trial ordered.

JOEL TIFFANY,
State Reporter.