Ingraham, J.
That the structure of the elevated railroad in Pearl street, materially interferes with the light of the plaintiff’s premises, and that the maintenance of the structure and operation of the road is a serious injury to plaintiff’s property, is established by the evidence.
That the defendant, the New York Elevated Railroad Co., was authorized by the legislature and by the city of New York to construct and operate an elevated road through Pearl street, was not disputed on the trial of this case, and plaintiff cannot maintain this action unless it appears that by the construction or maintenance of the railroad, some property of the plaintiff has been taken by the defendants without his consent, or without compensating him therefor.
It appears that long prior to the year 1664, a ferry was established from the present Peck Slip, on Manhattan Island, to a point on Long Island; and that a road was in use from the New York landing, along the East river shore on the present line of Pearl street to Hanover square (See Valentine's History of New York, 31, 72). In the grant made by Cornelius Van Tirnhoven to Stoffel Edwarstsen of a parcel of land soutli of the present Fulton Slip, dated July 8, 1656, the road on the river is mentioned, the property being bounded u on the south side by the road on the river.” See also map called the Duke’s Plan, dated in 1664, and which purports to be a plan of the town as it was in 1661, and by that plan a road is laid out on the river. See also the grant from Governor Nichols, *276 made on April 4, 1661, to Nicholas Davies, which granted liberty to erect and build a convenient wharf at the water side in the Smith Valley, and which contained this provision: “Always provided the erecting the said wharf shall in no way stop up or be prejudicial to the highway, which is to remain a good breadth, and convenient for carts and passengers.” The Smith Valley appears to have extended from the foot of William street (Old Slip) to about Beekman street (See Hoffman’s Treatise of the Estate and Rights of the Corporation of the City of Neto York as Proprietors, vol. 1, 231). By an ordinance of 1694, this street, or road, running from Burgher’s Path to the further end of the Smith Valley was to be called Queen street, and. from that time down, it appears on all of the old maps of the city as Queen street (See map in evidence dated 1738). On the plan of New York dated 1695, and published in a manual of the city of New York for the year 1851, on page 136, Queen street is laid out as running north from the water gate at the foot of the present Wall street to a point above plaintiff’s property. By an act of the colonial assembly of New York, passed on June 19, 1703, commissioners were appointed to lay out a road or highway from New York, through Westchester county to Connecticut, and their survey was made and filed on June 16, 1707. They reported that among other roads, they had established a road “from the gate at the end of Queen street by a small turning northerly until it meets with the other road at fresh water.” This gate at the end of Queen street, mentioned in the report, appears to have been about one hundred and fifty feet easterly from the corner of Beekman and Pearl streets.
It appears, therefore, that Queen street was open and in use as a road to that point (See Hoffman’s Treatise, 249. 254 ; see also diagram No. 13, Hoffman’s Treatise. 214).
I think, therefore, that it is established by the evidence that Pearl street in front of plaintiff’s premises was in use as a public road or street prior to the conquest of the New Netherlands by the English, and that whatever right the *277 Dutch government had in and to such street, passed to the conquerors and vested absolutely in the British crown. In the case of Dunham v. Williams (37 N. Y. 251), the court of appeals held that the title to the road-bed of a highway laid out prior to the conquest by the English was in the government; that the government was the absolute owner of the fee ; that no one had a present or reversionary title in the soil of the public highway on the ground that he was the owner of the lands through which it was laid. See also Hoffman’s Treatise (Vol. 1, 2d éd. p. 305), where it is said, “It is the undoubted rule of that law that highways belong to the sovereign power, as part of the royalties or public rights ; they belong to it absolutely. There is no right in the adjacent owners to the soil of the street, either during the use or upon a discontinuance and (on page 312), where the learned author says, “I think it may be considered as a very clear proposition that the title in the fee of the soil of all streets open prior to 1664, passes from the Dutch to the English sovereign, and under the patent to the Duke of York, passed as a royalty, and from him to the crown and to the state, unless the right went to the corporation under the Dongan charter. ”
The supreme court of Louisiana has held that where public places have been created by the sovereign power, this power may authorize the municipal corporation interested in such places, to alien or change their use or desig- ' nation whenever the public interest require it, and that the rights of the owners of property in the vicinity are subordinate to the paramount right of the legislature (Mayor, &c. v. Hopkins, 13 La. 326 ; Same v. Leverich, 13 Ib. 332).
The absolute fee, therefore, of Pearl street, vested in the crown; and on April 22, 1686, by the Dongan charter, “all and every the streets, lanes, highways and alleys within the said city of New York, or Manhattan Island aforesaid;” were granted to the mayor, aldermen and commonalty of the city of New York, for the public use and service of said mayor, aldermen and commonalty of the *278 city of New York, and the inhabitants of Manhattan Island aforesaid, and the travelers there, “to hold to their several and respective heirs and assigns forever.”
It is not material in determining this controversy whether the fee of the street passed to the city of New York by this charter, for by the act of March 7, 1793, all the estate, right and title and interest of the people in the streets or highways in the city of New York were vested in the city for the use of streets and highways, and by that act whatever right or property in the street that did not pass by the charter vested in the city of New York.
It is, however, clear that the owners of property abutting on this street, at the time of the conquest of the city by the English, as distinct from the other inhabitants of city, had no right or property in Pearl street, and unless it appears that they have acquired some interest in the street since that time, no property of the plaintiff’s has been taken by the defendants.
By the Pongan charter, the mayor, aldermen and commonalty of the city of New York were given power and authority to establish and appoint, order and direct the establishing, making, laying out, ordering, amending and repairing of all streets, lanes, alleys, highways, &c., in and throughout the said city of New York and Manhattan Island aforesaid, and by the Montgomery charter, dated January 15, 1730, this grant was ratified and confirmed, and it was provided that the mayor, aldermen and commonalty of the city of New York and their successors forever, should have full power, license and authority to lay out streets, lanes, alleys and highways, and to alter, amend and repair all such streets, lanes, &c., theretofore made or laid out, in such manner as the common council for the time being, or a major part of them, should think or judge to be necessary and convenient for all the inhabitants and travelers there. Under the authority thus given, the city of New York had power to adopt a public road then in use, and to maintain it as a public street (See opinion of Tracy, J., in Story v. N. Y. Elevated R. R. *279 Co., 90 N. Y. 122). It appears, therefore, that under this power and authority given by the charters, this public road was adopted, and maintained by the city of New York as Queen street, and was thereby dedicated as a public street. Subject, however, to tins dedication to the public, the city remained the absolute owner of the street, and, subject to the control of the legislature, could make any use of the street not inconsistent with the right acquired by the public by the dedication.
In the case of Sir John Ladd v. Shephard (2 Strange, 1004), one of the first cases in which the effect of the dedication of a road or highway to the public was considered, it was held that the dedication of a highway to the public was a right of passage and not a transfer of the property in the soil, and this principle has been almost universally followed and is now the settled law of this state (See Pearsall v. Post, 20 Wend, 111 ; Bloomfield, &c. Co. v. Calkins, 62 N. Y. 386).
The owners of the property abutting on the street had, in common with the other inhabitants of the city, the right to have this street kept open as a public street, but this dedication did not give to an abutting owner any property in the street. By such dedication, an abutting owner, as distinct from the public, acquired no easement in the street itself. The dedication was not to him but to the public. No grant was made to him. There was no covenant of the city, either express or implied to the abutting owner as an individual, that the street should be kept open as a public street, or that he should have or enjoy any peculiar right or easement in the street itself. Whatever right he took under the dedication, he took as one of the public, and not as an individual. The plaintiff, therefore, as an abutting owner, could have no property in the street by reason of its dedication by the city of New York (Brooklyn Park Commrs. v. Armstrong, 45 N. Y. 234).
There is no evidence in this ease to show when a house was first erected on the premises in question. It does appear that a house had been on the premises upwards of *280 forty years. Plaintiff or his grantors could not, however, acquire any right to the street by prescription. It is well settled that no one can acquire a title by prescription in a public street or highway; an individual using it would raise no particular grant in his favor (Burbank v. Pay, 65 N. Y. 51; Wheeler v. Clark, 58 Ib. 261).
Thé case of Story v. New York Elevated R. R. Co. (90 N. Y. 122), does not sustain plaintiff’s right to an easement in Pearl street. In that case the court held that the grant by the city of the land bounded by the street, gave to an abutting owner the easement as appurtenant to the piece of land granted, and the decision of the case depended on the extent of the easement granted. The grant of the city was held to have created the easement. Danforth, J., says, at page léá : “It is not necessary to consider the effect of the circumstances I have now adverted to, upon the rights of the public in the street in question. It is conceded to be a public street. But besides the right of passage, which the grantee as one of the public acquired, he gained certain other rights as purchaser of the lot, and became entitled to all the advantages which attached to it. The official survey, its filing in a public office, the conveyance by deed referring to that survey, and containing a covenant for the construction of the street, and its maintenance, makes as to him and the lot purchased, a dedication of it to that use for which it was constructed. There was thus secured to the plaintiff the right and privilege of having the street forever open as such.” See also opinion of Tracy, J., on page 166 : “ The city of New York, having power to lay out and open streets, and to acquire lands for such -purposes, had power to dedicate its own lands to such uses, and to bind itself by a covenant with its grantees of abutting lands, that a particular street should forever be kept as a public street. What interest, then, if any, did the grantee acquire in the bed of the street by such grant and covenant ?” And on page 118, in stating the conclusions to which the court had arrived, he says : “ First. That the *281 plaintiff, by force of the grant of the city made to his grantors, had the right or privilege in Front street which entitled him to have the same kept open and continued as a public street for the benefit of his abutting property.”
That case therefore does not hold that an easement exists in favor of an abutting owner where there was no grant, either express or implied, to the owner of the adjacent property by the city, or the owner of the fee of the street.
In Mahady v. Bushwick Railroad Co. (91 N. Y. 148), it does not appear how the city acquired the fee of the street in question, and as what was there said was on the authority of the Story case (supra), it must be presumed that the property of the plaintiff in that street was created in the same way as the plaintiff’s property in the street in the Story case.
In no case that has been cited, or that I have been able to discover, has it been held that the mere fact that a piece of property abutted on a street or highway, gave the owner of the property as an individual, as distinct from the public, any property in the street or highway, and every case in this state in which a use of a highway or street authorized by the legislature has been enjoined, is either where the plaintiff owned the fee of the street, as in Williams v. N. Y. Central R. R. Co. (16 N. Y. 97), and Wager v. Troy Union R. R. Co. (25 N. Y. 526), where the abutting owner was the owner of the easement in the street acquired by grant, either express or implied, as the Story case (supra), or the fee of the street had been acquired by the city under the provisions of the act of 1818, which provided that the fee should vest in the city, in trust that the same be appropriated and kept open as and for a public street forever, as in Peyser v. N. Y. Elevated R. R. Co. (12 Abb. N. C. 276).
In the case of Irving Bank v. Manhattan Elevated R. R. Co., the owner of both the fee of the street and the lot, conveyed the lot bounding it on the street, and that was *282 held to give the grantee the same easement in the street that the grant by the city gave to the plaintiff in the Story case.
The grant by the Dongan charter to the corporation of the city of New York, “ Of the streets, highways, lanes and alleys within the city of New York and Manhattan Island aforesaid, for the public use and service of the said mayor, aldermen and commonalty of the said city, and of the inhabitants of Manhattan Island and. the travelers there,” did not give the plaintiff or his grantors, as distinct from the other inhabitants of the said city, any interest or property in the streets included with the grant. Whatever right was reserved by the grant was vested in the British crown, and passed to the people of the state.
It is well settled in this state by a long line of decisions, that so far as public rights or interests in the street or highway are concerned, the legislature has supreme control over them, that where no private property is taken, the legislature may regulate such public use ; may change one kind of public use into another, and as to the interest or property vested in the public, may control or dispose of it in any way (People v. Kerr, 27 N. Y. 188 ; Kellinger v. Forty-second street R. R. Co., 50 Ib. 206 ; Wagner v. Troy Union R. R. Co,, 25 Ib. 526). See also the matter of the New York Elevated Eailroad, general term, supreme court, March, 1885,' and cases there cited.
In the case of the Brooklyn Park Commissioners v. Armstrong (45 N. Y. 234), the court of appeals held that the legislature had power to authorize a municipal corporation to sell property acquired by it under the right of eminent domain, for the purpose of a park. That the fact that the city had made and filed a map on which the property was laid out as a park, and that adjoining property had been bought and sold and paid greater taxes and assessments to the city, and upon the assumption that the property in question should remain a park, did not create an implied contract between the city and the owners of the property. And that in the absence of any direct or *283 particular relation between the city and the owner of the real estate, the legislature could direct that the property should be diverted from that purpose and sold, or otherwise disposed of.
Having carefully considered the questions involved in this case, I am of the opinion that on the evidence as it stands, plaintiff has no interest or property in Pearl street in front of his premises that has been appropriated or used by the defendants, and that the defendants are entitled to judgment.
That the erection and maintenance of the railroad in Pearl street has caused serious injury to plaintiff’s property is established, but entertaining the opinion before expressed, the court can give him no relief without overturning principles that have been long settled in this state.
Judgment is therefore ordered for defendant, with costs. Findings to be settled on two days’ notice.