DAVID W. HOAG, RESPONDENT, *v.* EDWIN O. PIERCE, APPELLANT.

*Easement — use of a public well — right acquired by dedication — its violation enjoined.*

David W. Hoag and Edwin O. Pierce each owned a hotel upon the same street in a village on which, opposite the premises of Pierce, in the street and eight feet distant from the curb, was a well, which had existed there for fifty years; had been kept in order by contributions from the neighbors, including Hoag, and had been commonly used by the persons of the vicinity. Pierce having threatened to make changes in the well, which would result in his having the exclusive use of it, Hoag brought an action to restrain him from so doing and obtained an injunction.

Upon the trial of this action the court found that the well was not on the premises of Pierce, but was in the village street.

*Held,* that the action could be maintained and that an injunction was proper.

That a well could be dedicated to the use of the public, and that it was not necessary to adopt any particular form or ceremony in so doing.

APPEAL by the defendant Edwin O. Pierce from a judgment of the Supreme Court, entered, after a trial by the court at the Onondaga Equity Term, in the office of the clerk of the county of Onondaga on the 18th day of March, 1891, perpetually enjoining the defendant from closing a well or interfering with the plaintiff's use of it.

The parties owned parcels of real estate situated on the south side of Main street, in the village of Elbridge, upon which properties are two hotels. In Main street, opposite the premises of the defendant, some eight feet outside of the curb-stone and south of the center line of the street, is situated a well in which is a pump, from which water has been drawn for the use of sundry persons residing in the vicinity for a period of some fifty years; apparently the pump was kept in order by contributions from the persons using the water from the well. Defendant was about to insert a pipe in the well and to conduct the water into that portion of his premises embraced within the inclosure thereof, and to remove the pump and to prevent the plaintiff and others from enjoying the use of the well as it has been enjoyed by the plaintiff and his predecessors in title and other neighbors for a great period of years. This action was brought to restrain the defendant, and an injunction obtained and continued

down to the trial and made permanent by the decision at the trial. In the complaint it is alleged as follows : "And plaintiff alleges on information and belief that said defendant is the owner of the premises in said village, described as follows, to wit: All that tract or parcel of land situate in the village of Elbridge, county of Onondaga and State of New York, being part of lot number 83 in said town, consisting of the hotel property in said village, bounded and described as follows, to wit : On the north by Main street; on the east by South street ; on the south by lands of the late Mrs. Carpenter, and formerly owned by Newell O. Merriman ; on the west by land formerly owned by J. & E. Ingerson and the estate of Nathan Munro, containing one acre of land, be the same more or less, said premises being commonly known as the Munroe House in said village." In another part of the complaint it was alleged as follows : "And plaintiff further alleges, on information and belief, that said well is not on the premises of the said defendant, the same being within and upon the land of said Main street, and about twelve feet north of the defendant's north line, and the south line of said Main street. That neither the said defendant nor any other private person has any right whatever to remove or fill up, or change or alter said well or its location, or to do any other act or thing whatever (except to use in common with numerous other persons, herein described and mentioned, the waters thereof), which may in any way or manner abridge or interfere with the free and unobstructed use of and the right to the use of the waters of said well by the said public, including the plaintiff and the numerous other persons described and referred to herein."

In the answer of the defendant it is alleged : "And the defendant, for further answer to said complaint, alleges that he is the owner in fee of the premises upon which said well is located ; that said premises are described as follows : " (Then follows a description like the one which has been quoted from the complaint).

The trial court found: "That the well mentioned in the complaint was dug more than fifty years ago in the public highway running easterly and westerly through the village of Elbridge and about twelve feet from the south bounds of said street, between the sidewalk on the south side and the beaten track of carriages and

teams. And the said well has stood there ever since and its waters have been enjoyed by many persons, including the plaintiff, residing in the immediate vicinity and their predecessors and grantors for more than twenty years before the commencement of this action, such waters having been so used by the plaintiff and said persons as their water supply for domestic use;" and also found "that the plaintiff is the owner or occupant of the premises used by him as a residence and hotel in the immediate vicinity of said well, being a few rods westerly on the south side of said street, and that he has been such occupant and in possession thereof for about four and a half years under a contract to purchase the same, and that for more than twenty years prior to the commencement of this action he and his predecessors and grantors had continuously and uninterruptedly used the waters from said well, and his predecessors for more than twenty years before his occupancy began had so used the waters, and that the plaintiff and his predecessors and the other persons using said waters and their predecessors had contributed to keep said well in repair, the expense being in part defrayed by subscription."

The court also found, as a matter of fact: "That the defendant is the owner and occupant of certain premises adjacent to the south side of said street north of which the well is located, but is not and was not at the commencement of this action the owner of said well nor of the land in said street within which said well is situated."

And also: That the defendant "wrongfully and without right threatened to and attempted to take up said well and to close up the well and conduct the waters thereof, by means of a pipe under the surface of the ground, within an enclosure on his own premises formed by his buildings and a high and close-board fence and partition which he had built previously, and that the effect of said act would be to deprive the plaintiff and others of like interest of access to said well, except by defendant's consent, which acts were restrained by the temporary injunction granted in this action." And also: "That the plaintiff and the other persons of like interest, by the open and uninterrupted use of said well by himself and his predecessors in the ownership of said premises occupied by him, and having so used the same for more than twenty-five years next preceding the commencement of this action, and without hindrance or objection from the real owners of said well, has acquired, as against the defendant,

the right to use said well in the way he and they had been accustomed to use it."

As conclusions of law the court found : " That the plaintiff had the right, as against the defendant, to the use of said water at the time of the commencement of this action, and now has it, and that the defendant had no right to do the acts threatened or attempted by him, or to close or cover up said well, or to conduct the waters thereof upon his own premises; nor had the defendant the right to do any act which would impair, abridge or interfere with the right of the plaintiff to use and enjoy the waters of said well in common with others of like interest, except the right to use the same in common with the plaintiff and said persons; that the plaintiff had the right to bring this action to restrain the defendant from doing the acts threatened or attempted by him, and he is entitled to the following judgment and relief, as against said defendant, viz. :

" I. That it be adjudged that, as against this defendant, the plaintiff and others of like interest have the right to perpetually draw and use the waters from said well in common as heretofore.

" II. That the defendant, his agents, servants, heirs and assigns, be perpetually enjoined and restrained from interfering with said well, and from taking up or filling up said well, or removing the same or said pump, and from any and all acts that may impair, abridge, hamper or interfere with the rights of plaintiff and others of like interest in the use of the water of said well in its present location, excepting that the defendant may use the same in common with plaintiff and said other persons."

Exceptions were filed by the defendant to several parts of the decision, and to the refusal to find in accordance to several requests made by the defendant.

*A. W. Shurtleff* and *Louis Marshall*, for the appellant.

*Frank D. Wright* and *F. C. Cushing*, for the respondent.

HARDIN, P. J. :

It is insisted in behalf of the appellant that by the pleadings it was conceded " that the defendant was the owner in fee of the land on which the well stood." In the complaint it was alleged " that said well is not on the premises of the said defendant, the same

being within and upon the land of said Main street, and about twelve feet north of defendant's north line and the south line of said Main street." Reading that allegation in connection with the averment in the earlier part of the complaint, to the effect that the premises of the defendant were bounded on the north by Main street, it must be assumed that the words of description found were used for the purpose of indicating, in a general way, the occupation of premises by the defendant. Again, upon the trial, it is apparent that the position was taken by the plaintiff that the defendant only owned to the side of the street, and the plaintiff gave evidence tending to support that position; and the defendant so understood, during the progress of the trial, and gave what evidence he was able to upon the issue of the actual ownership of the well in question. No attention seems to have been called to the peculiar language of the answer relied upon now by the defendant with a view of sustaining his position that the complaint, in effect, averred ownership in the defendant of the well in question. We, therefore, think the court was called upon to find, as a matter of fact, and determine whether or not the defendant owned the well in question. Upon that subject plaintiff furnished evidence from the earlier deeds relating to the defendant's premises, showing that his premises were bounded by the south side of Main street, and, therefore, that he was not an owner to the center of the street. Besides, it appears by the evidence that as early as the year 1800, by chapter 78 of the laws of that year, the "old Seneca Turnpike, or Seneca Turnpike," was incorporated, and it was conceded that, pursuant to said chapter 78 of 1800, that " it was empowered to acquire and hold to itself and successors forever, lands, wherever it should deem it most convenient to build its road between Utica and Cayuga county, N. Y." Evidence was given tending to show that the turnpike company occupied the premises where the well is situated for a long period of years, and down to the time when " it was turned into a plank-road company." By chapter 97 of the Laws of 1850 the Seneca Road Company was authorized to sell or to abandon its road or parts thereof. By chapter 87 of the Laws of 1854 it was provided that if the plank-road company should abandon its road, the property should become the property of the town. It appeared by the evidence of Luke Ranney that the Seneca Road Company operated

its road " until it was turned into a plank-road company." It appears by the evidence that it has not been operated either by the Seneca Company or by the Plank-Road Company for more than twenty years, and that the street has been under the care, supervision and in the use of the incorporated village of Elbridge, at the place where the well is situated. It seems, with this evidence before the court, the assumption that the road-way or well was owned by the village of Elbridge was warranted ; and that being so, the language found in the defendant's deed was " satisfied by the title extending only to the roadside," according to the rule laid down in *Dunham* v. *Williams* (37 N. Y., 251), especially when we recall that the earliest deeds in the defendant's chain of title bounded the premises occupied by the defendant, on the north by the south bounds of Main street.

*Dunham* v. *Williams* (*supra*), was referred to approvingly in *Kings County Fire Insurance Company* v. *Stevens* (87 N. Y., 287), and at the close of the opinion in that case, ANDREWS, Ch. J., said : " The side of the road may have been made the boundary of the land conveyed, upon the mistaken supposition that the company had acquired, by the proceedings for condemnation, the absolute title to the land taken, or some other reason may have existed for restricting the grant. But we have no guide in ascertaining the intention of the parties to the conveyance, outside of the language of the deed, and upon this language, as interpreted by the courts of this State in analogous cases, we think the southerly side, and not the center of the Wallabout road, is the boundary." We think the trial judge was warranted in applying that rule to the case made before the Special Term.

( 2.) It was made apparent by the evidence upon the trial that the plaintiff and his predecessors in interest for more than twenty years had enjoyed the use of the well, and had, from time to time, contributed to the expense for the maintenance of a pump therein under an assumption of and claim of right to the use of water from the well.

The learned counsel for the defendant calls our attention to *Burbank* v. *Fay* (65 N. Y., 65); in that case it was held : " No private use or occupancy, whether adverse or by permission, however long continued, will vest a title inconsistent with the public right, or will impair or affect the rights of the State." It seems that the use made

of the well in question by the plaintiff, as well as others, was not inconsistent with the public right in the street; did not interfere with the right of way or public passage; on the contrary, contributed to the comforts and needs of the public for a long series of years; and the enjoyment of the waters of the well and of the use of the pump by the plaintiff in no way tended to interfere with the public passage, or use of the street or highway.

In *Meyer* v. *Phillips* (97 N. Y., 489), referred to by the appellant, the use made of a stream across the plaintiff's land had been for only a few years in floating logs, and it was, therefore, held that there had been no easement acquired by prescription. We see nothing in the case which aids the appellant.

The evidence before the Special Term warranted the finding that the defendant contemplated not only removing the water by means of a conduit from the well into his inclosure, but that he threatened to and contemplated a destruction of the pump. The plaintiff had contributed and had a proprietary interest therein which the defendant was not entitled to destroy as he threatened to do before the commencement of this action. We think, from the evidence before the Special Term, the conclusion reached that the defendant should be restrained from conducting the waters away from the well, covering up and destroying the usefulness of the well, and taking down, removing and destroying the pump then in use in the well, towards the purchase of which the plaintiff had contributed, was warranted.

In the *City of Cincinnati* v. *The Lessee of William White* (6 Pet., 431) it was held: "There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation."

In the course of the opinion in that case, in considering public dedications, and a dedication of an easement for the use of the public, it was said that the doctrine was applicable to dedication of lands to public use, and that the doctrine had been applied by that court "to the reservation of a public spring of water for public use in the case of *McConnell* v. *The Trustees of the Town of Lexington* (12 Wheat., 582);" and the court added: "The reasonableness of reserving a public spring for public use; the concurrent opinion

of all the settlers that it was so reserved; the universal admission of all that it was never understood that the spring lot was drawn by any person, and the early appropriation of it to public purposes, were decisive against the claim." (See *Denning* v. *Roome*, 6 Wend., 657.)

We think the decision made at the Special Term should stand.

MARTIN and MERWIN, JJ., concurred.

Judgment affirmed, with costs.