(9 App. Div. 181.)

## MOTT v. CLAYTON.

(Supreme Court, Appellate Division, Second Department. October 6, 1896.)

1. HIGHWAYS—TITLE TO FEE—DUTCH ROADS IN NEW YORK.
   The ownership of the fee of roads established during the Dutch occupancy of New York is governed by the Dutch law, which vests it in the public. Dunham v. Williams, 37 N. Y. 251, followed.

2. STARE DECISIS—RULE OF PROPERTY.
   The decision in Dunham v. Williams, 37 N. Y. 251, that the title to the fee of the Brooklyn & Jamaica Road was in the city of Brooklyn, on the faith of which title to parts of the highway it was acquired by individuals, is a rule of property.

3. TITLE TO HIGHWAYS—CONFLICT OF LAWS—CONFIRMATION OF DUTCH GRANTS.
   The guaranty given by the English authorities to the occupants on the surrender of New York by the Dutch, that the occupants should peaceably enjoy their possessions, merely confirmed the rights which they had under the Dutch law, and therefore did not affect the rule that a grantee from the Dutch government of land abutting on a highway acquired no title to any part of the highway.

Controversy between Jesse Mott, as plaintiff, and Walter F. Clayton, as defendant, submitted, without action, on an agreed statement of facts, pursuant to Code Civ. Proc. § 1279. Judgment for plaintiff.

Argued before BROWN, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Robert H. Wilson, for plaintiff.
Foley & Wray, for defendant.

CULLEN, J. The plaintiff agreed to sell, and the defendant to purchase, certain real estate in the city of Brooklyn. The defendant declined to complete the purchase, on the ground that the plaintiff's title was defective. The question of the validity of the plaintiff's title is the only one submitted to us for determination.

The northern front of the plot contracted to be sold falls within the limits of the old Brooklyn & Jamaica Turnpike Road. The

submitted case concedes "that the Brooklyn & Jamaica Road was an ancient highway, and had been used as a road at the time that the colony of New York was a province of the States General, and when it was in the possession of the original settlers, and subject to the dominion and laws of the Dutch government." The history of this road is detailed at length in the report of Dunham v. Williams, 37 N. Y. 251. For some years past, the road has been abandoned. The plaintiff traces his title to so much of the property as abuts the road from one Sarah Lefferts, admittedly the owner of the adjoining farm, through mesne conveyances, including a deed from Edward Copeland to Clarence D. Sackett, continuously to himself. No criticism is made on this chain of title so far as it relates to that part of the plot in suit lying south of the limits of the old road. The defendant, however, contends that two of the deeds in the chain of title were insufficient to carry the adjacent half of the road, assuming that Sarah Lefferts owned it. In the deed from Lefferts to Moser and others, the description commences at a point on the southerly side of the turnpike road, then running on various courses and various distances to "the said last-mentioned road, thence along the said road, to the point of beginning." The description in the deed from Copeland to Sackett begins at the corner "formed by the intersection of the westerly side of Sackett avenue with the southerly side of the Jamaica turnpike," and running various courses and distances to the "southerly side of the Jamaica turnpike, thence easterly along the same, to the point or place of beginning." We think it too clear for debate that, under the authorities, neither of these conveyances included any part of the road. Insurance Co. v. Stevens, 87 N. Y. 287; Blackman v. Riley, 138 N. Y. 318, 34 N. E. 214. The plaintiff can therefore establish no title through this source.

But the character of this road was not the same as that of a modern highway. It was an old Dutch road. Under the Dutch law, the fee of the highway, not the mere easement, was in the public. The original patent or charter from the Dutch authorities of the town of Brooklyn is lost. After the English acquired possession of the province, two patents were granted to the town,—one October 18, 1667, by Richard Nicolls, governor general; and one May 13, 1686, by Thomas Dongan, lieutenant governor. These patents granted to the patentees, "for and on behalf of themselves and their associates, the freeholders and inhabitants of the town of Brooklyn, their heirs, successors, and assigns, forever," all the lands within the limits of the town. On these facts, it was held in Dunham v. Williams, supra, that the title to the bed of the highway was not in the adjacent owners, but, under its patents, vested in the town of Brooklyn and the city, its successor. At an early date the road was acquired by a corporation for a turnpike. Subsequently, it was changed into a plank road. The court of appeals, in the case cited, refrained from deciding whether the turnpike company had acquired an easement or the fee of the road. This question is not material in the present case, for the plaintiff has acquired, by conveyances from the city of Brooklyn and the Brooklyn & Ja-

maica Plank-Road Company, all the title of each of those parties. to the premises in suit. Therefore, under the authority of Dunham v. Williams, the plaintiff has perfect title to the land contracted to be sold.

Counsel for the defendant cites Mortimer v. Railroad Co. (Sup.) 6 N. Y. Supp. 898, to show that the Dutch colonial government did not own the fee of the old highways existing at the time of their possession of the province. The opinion delivered by Judge Truax in that case goes to the extent stated. The burden of the argument of the learned judge is to establish the proposition that the Dutch never had any valid claim to the province of the New Netherlands. In that conclusion Judge Freedman concurred, and further stated that "neither the Dutch nor Roman law ever prevailed in the state of New York de jure, and that the common law must be deemed to be the original source of all our law." The proposition contended for by Judge Truax is not decisive of the question involved, for the rights of the Dutch in the province were finally determined by the terms of the capitulation. 2 Col. Hist. N. Y. p. 250. The effect of the capitulation was considered in Dunham v. Williams, and it was there held that, by virtue of the capitulation, the title to the bed of the road remained in the government till the confirmatory grant to the town. The question discussed by the learned judge in Mortimer v. Railroad Co. was not absolutely necessary to the decision of the case. However that may be, in the respects cited, the opinion is directly opposed to the decision in Dunham v. Williams. Nor does the authority of Dunham v. Williams stand unsupported by decisions in other cases.

In Canal Appraisers v. People, 17 Wend. 572, Senator Beardsley held that, the original grant of the Manor of Rensselaerwick having been obtained from the Dutch government, its construction was to be controlled by the civil law, and that the grant did not convey the bed of the Mohawk river. See, also, Commissioners v. Kempshall, 26 Wend. 404.

In Smith v. Rochester, 92 N. Y. 463, in discussing the right of the people to the beds of rivers, Chief Judge Ruger said, in referring to the cases cited:

"We think this and similar cases might properly have been decided, for reasons peculiar to the Mohawk and Hudson rivers, upon the grounds stated in Commissioners v. Kempshall by Senator Verplanck, and by the chancellor and Senator Beardsley in Canal Appraisers v. People. The titles granted to the original settlers in the Hudson and Mohawk valleys, as construed by the rules of the civil law prevailing in the Netherlands, from whose government they were derived, did not convey to their riparian owners the banks or beds of navigable streams. Upon the surrender of this territory, the guaranty assured by the English authorities to its inhabitants of the peaceable enjoyment of their possessions simply confirmed the right already possessed; and the beds of navigable streams, never having been conveyed, became, by virtue of the right of eminent domain, vested in the English government as ungranted lands; and the state of New York, as a consequence of the Revolution, succeeded to the rights of the mother country."

This is equally true of the beds of highways, except that in this case the crown, before the Revolution, granted its title in such beds to the town.

It is now too late to question the authority of Dunham v. Williams. The road under discussion formerly traversed the city of Brooklyn for a distance of about six miles. It was not one of the highways retained when the system of city streets and avenues was adopted. It has been almost wholly abandoned, and the land lying within its limits has been incorporated into city lots. The decision cited has become a rule of property in this city, and title to the abandoned part of the highway has been acquired on the faith of that decision. Its binding force should, therefore, not now be questioned.

There should be judgment for the plaintiff on the submitted case, that the defendant complete his purchase. All concur.