THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* TRUSTEES OF FREEHOLDERS AND COMMONALTY OF TOWN OF BROOKHAVEN and Others, Defendants.

Supreme Court, Suffolk County, December 31, 1932.

*John J. Bennett, Jr., Attorney-General* [*Warren H. Gilman, Deputy Assistant Attorney-General,* of counsel], for the plaintiff.

*Ralph J. Hawkins,* for the defendant Trustees of Freeholders and Commonalty of Town of Brookhaven.

*Ernie Adamson* [*George E. Darling* of counsel], for the defendant Great Eastern Gravel Corporation.

*Cullen & Dykman,* for the defendant Seaboard Sand and Gravel Corporation.

*Foley & Martin,* for the defendant O'Brien Brothers Sand and Gravel Corporation.

VUNK, J.   The plaintiff brings this action for a judgment declaring that the State of New York has title to the lands described in the complaint.   The description of the lands described in the complaint is lengthy.   A brief description thereof, however, is the title to the bed of Mount Sinai harbor, Port Jefferson harbor, Setauket harbor and Conscience bay.   These lands are all situated in the town of Brookhaven, Suffolk county, N. Y.

The defendants Great Eastern Gravel Corporation, Seaboard Sand and Gravel Corporation, and O'Brien Brothers Sand and Gravel Corporation hold leases and/or concessions granted by the defendant, the Trustees of the Freeholders and Commonalty of the Town of Brookhaven.

The issue involved herein, therefore, is whether title to the lands in question is vested in the plaintiff, the People of the State of New York, or in the defendant, the Trustees of the Freeholders and Commonalty of the Town of Brookhaven.

The plaintiff's contention, briefly stated, is that the lands in question were never granted to any one prior to the Revolution, and that by the act of the Colonial Legislature, known as section 14 of chapter 25 of the Laws of 1779, the title to the lands became vested in the People of the State of New York.

The defendant trustees contend, however, that the lands in question were granted prior to the Revolution and prior to the aforesaid act of 1779 by reason of two certain patents.   These patents are generally known as the Nicolls patent and the Dongan patent.

The Nicolls patent was granted by Richard Nicolls, Esq., Governor General, under James, Duke of York, in the year 1666, to Captain John Tucker and others, as patentees for the benefit of the freeholders and inhabitants of the town of Brookhaven, their heirs, successors, and assigns.   The lands included within this grant or patent were therein described as follows: "All that Tract of Land,

which already hath beene or that hereafter shall be Purchased, for and on the behalfe of the said Towne, whether from the native Indyan Proprietors, or others within the Bounds and Limitts, hereafter sett forth and exprest: (Vizt,) That is to say, the west Bounds to begin at the Line run by the Inhabitants of the said Towne, between them and Mr. Smith's lands, of Nesaquake, as in his Patent is sett forth, and to go East to the head of the Wading River, or Redd Creeke, from whence as also from their west Bounds to stretch North to the Sound, and South to the Sea or Maine Ocean. All which said tract of Land, within the Bounds and Limitts aforesaid, and all or any Plantations there upon, from henceforth are to belong and appertaine to the said Towne; Together with all Havens, Harbours, Creekes, Quarrys, woodlands, meadows, Pastures, marshes, waters, Rivers, Lakes, ffishing, Hawking, Hunting and ffowling, And all other Profitts, Commodityes, Emoluments and hereditaments, to the said Land and premises within ye Limitts and Bounds afore mentioned described, belonging, or in any wise appertaining; To have and to hold, all and singular, the said Lands, Hereditaments and premises, with their and every of theire appurtenances, and of every part and Parcell thereof."

The Dongan patent was granted by Thomas Dongan, Captain General, under James the Second, in 1686. It confirmed and ratified all the provisions of the Nicolls patent. It was granted to the same Captain John Tucker and others, constituting the freeholders and inhabitants of the town of Brookhaven, and made the town a body politic and created the trustees of the freeholders and commonalty of the town of Brookhaven a body corporate.

The Dongan patent is claimed by the defendant trustees to include the lands in question described in the complaint. The important part of the description in the Dongan patent reads as follows: "All that tract of land which already hath been, or that hereafter shall be purchased, for and on the behalfe of the said towne, whether from the native Indian proprietors or other, within the bounds and Limitts hereafter sett forth and exprest, that is to say, the west bounds to begin at the line run by the Inhabitants of the said towne, betweene them & Mr. Smith's lands, of Nesaquake, as in his pattent is sett forth, & to go east to the head of the wading river or redd Creeke, from whence as also from their west bounds to stretch north to the Sound, and south to the sea or maine Ocean, all which said tract of land within the bounds and Limitts, and all or any plantations thereupon, from henceforth, are to belong and appertaine to the said towne, together with all havens, harbors, Creeks, Quarries, woodlands, Meadows, pastures, Marshes, Waters, Rivers, Lakes, fishing, hawking, hunting and fowling; And all

other profitts, Commodityes, emoluments & hereditaments to the said land and premissess within the limits & bounds aforementioned Described, belonging or in any wise appurtaineing. * * * ''

The aforesaid Nicolls patent and Dongan patent have been construed by the courts in various decisions. Apparently the first ruling of importance is that contained in the decision of the Court of Appeals in *Trustees of Town of Brookhaven* v. *Strong* (60 N. Y. 56, 72). In that action the question of the title to the lands under water of the Great South bay was involved. In its decision the court states: '' The general southern boundary is the ocean, which includes the beach, and of course the bay.''

In the action of *Town of Southampton* v. *Mecox Bay Oyster Co.* (116 N. Y. 1, 16) the court said: '' In this case there is no dispute as to the uninterrupted user by the town under these patents for two hundred years, and, in the face of such user, it would be idle to discuss the technical or literal meaning of the language of the charter. * * * Even though it be susceptible of the meaning claimed for it by the appellant, the strict letter of the instrument must now give way to the practical construction adopted and acted upon by the inhabitants of the town.''

In *Hand* v. *Newton* (92 N. Y. 88) the Court of Appeals held that these patents vested in the towns the land under water in the bays and harbors included within the bounds of the patent. In other words, that '' bounded North by the Sound and South by the main Ocean '' was intended to convey all the lands and water in between. This action involved the title to an oyster bed under the water of Port Jefferson harbor, and a portion of the lands described in the complaint.

The Court of Appeals, in the case of *Roe* v. *Strong* (107 N. Y. 350, 358), made this statement, which the writer deems of great importance: '' But whatever limitations may have been imposed upon the title of the town of Brookhaven for the protection of the public in the use of navigable waters, it is no longer an open question that the colonial patents to the Long Island towns vested in the towns the legal title to the soil under the waters of the bays and harbors within the bounds of the patents.''

The defendants claim that these decisions lay down a rule of property, on the faith and credit of which titles have become vested, and the decisions may not now be questioned. There seems to be authority for such a proposition. (*Mott* v. *Clayton*, 9 App. Div. 181; *Peck* v. *Schenectady Ry. Co.*, 170 N. Y. 298.)

The decisions with reference to the charters involved in this action have been followed by decisions in relation to charters of other Long Island towns. (*Lowndes* v. *Huntington*, 153 U. S. 1;

14 S. Ct. 758; 38 L. Ed. 615; *Tiffany* v. *Town of Oyster Bay*, 209 N. Y. 1.)

The plaintiff herein, however, contends that these decisions are not binding upon the People of the State of New York in this action, for the reason that such people were not made a party to any of these proceedings. Technically this is true. However, the only point that seems of any importance, raised at this time by the plaintiffs, which could have been pleaded in event that they had been made parties defendant in the actions heretofore quoted, seems to be an alleged claim that the patents themselves are ineffective to grant title. The plaintiff's contention in that respect is that under the provisions of the Duke of York's Laws (1 Col. Laws, 40) reading as follows: " No Purchase of lands from Indians After the first day of March, 1664, shall be Esteemed a good Title without leave first had and obtained from the Governour and after leave so obtained, The Purchasers shall bring the Sachem and right owner of such Lands before the Governoure to acknowledge satisfaction and payment for the said Lands whereupon they shall have a grant from the Governoure And the Purchase so made and prosecuted is to be entered upon record in the Office & from that time to be valid to all intents and purposes." And the instructions to Governor Dongan, 1686 (1 Col. Laws, 180) as follows: " 13. And our further will and pleasure is that all other Laws, Statutes & Ordinances already made within Our said Province of New York shall continue & bee in full force &. vigor, soe far forth as they doe not in any wise contradict impeach or derogate from this Commission or the Orders & Instructions herewith given you, till you shall, with the advice of our Council, pass other Laws in our Name for the good government of our said Province, which you are to doe with all convenient speed." The acquiring of the title of the Indians to lands described in the patents was a condition precedent to title vesting in the grantees.

In view of the fact that the Indians had no title to the lands in question, and that the requirement of acquiring a grant or deed from the Indians was unnecessary, I cannot agree with the contention of the plaintiffs.

In *Martin* v. *Waddell* (16 Pet. 367, 409; 10 L. Ed. 997) the court said: " The Indian tribes in the new world were regarded as mere temporary occupants of the soil, and the absolute rights of property and dominion were held to belong to the * * * nation by which any particular portion of the country was first discovered. Whatever forbearance may have been sometimes practised towards the unfortunate aborigines, either from humanity or policy, yet the territory they occupied was disposed of by the governments of

Europe at their pleasure, as if it had been found without inhabitants."

Assuming, however, that the court is in error in holding contrary to the contention of the plaintiff as to the two propositions: (a) That the patents insufficiently described the limits to include the premises described in the complaint, and (b) that the patents should be voided by reason of failure to comply with the alleged conditions precedent with reference to acquiring the title of the Indians, there remains another objection to the granting to plaintiffs the relief asked.

The Civil Practice Act, section 31, being the former section 362 of the Code of Civil Procedure, provides:

" § 31. When the people will not sue. The people of the state will not sue a person for or with respect to real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless either

" 1. The cause of action accrued within forty years before the action is commenced; or

" 2. The people, or those from whom they claim, have received the rents and profits of the real property or of some part thereof, within the same period of time."

The defendant trustees of the town of Brookhaven have for over two hundred and forty years exercised acts of dominion over the lands in question. Such acts of dominion have been open and notorious. As against an individual they would be sufficient to constitute adverse possession.

If the rights claimed by the plaintiff were sovereign rights, such acts of dominion would be of no importance. However, the question here involved is not the right to the use of the navigable waters over the lands in question. This action involves the title to the soil under such waters. Such a right is known as a proprietary right of a State or other government. (*Burbank* v. *Fay*, 65 N. Y. 57; *Matter of Commissioners of the State Reservation at Niagara*, 37 Hun, 537.)

It is undisputed that at no time did the People of the State of New York receive or acquire in any manner whatsoever either rents or profits from the real property which is the subject of this action.

It is also undisputed that all rents and profits of every kind and description have been acquired by the defendant trustees.

The trustees have leased the lands for various purposes, such as the building of docks, the planting of oysters, the erection of a shipyard, the right to remove sand and gravel, and the right of bathing privileges. The said trustees have also sold and conveyed various portions of land within the premises described in the complaint. A

great number of these leases and conveyances are set forth in the list of such stipulated to be taken from the town records. It is unnecessary, for the purposes of this opinion, to go into further detail concerning the same.

In this connection it might be well to note the fact that the Legislature of the State of New York enacted chapter 54 of the Laws of 1797, entitled, "An Act in addition to an Act entitled, 'An Act for the further direction of the Commissioners of the Land Office,' and for other Purposes therein mentioned." This act provided that the Surveyor-General should cause to be surveyed so much of the bounds of any of the counties of the State as had not been surveyed and that it should be the duty of the supervisor of each town of the county of Suffolk to cause an accurate map to be made of the town of which he is supervisor, and for that purpose to cause so much of the outlines of such town to be surveyed, in addition to previous surveys, and the map shall be delivered to the Surveyor-General's office before the first day of the following February.

The trustees of the town of Brookhaven, on the 2d day of October, 1797, adopted a resolution that Isaac Hulse should make and survey a map of the town. Such map was thereafter made by the said Isaac Hulse and was filed with the Surveyor-General. This map includes, as a portion of the town of Brookhaven, the premises in question. It has been filed with the State for more than one hundred years. It was made at the direction of the State, and there is no evidence that the State, at any time, disputed its accuracy.

I do not hold that section 31 of the Civil Practice Act is at all a bar to this action. Having that section in mind relating to actions that will not be brought by the State against a person for or with respect to real property, and that individual rights under these patents are necessarily involved in the determination of the action, I am of the opinion that the State should not at this time maintain this action. It is against the settled policy of the State. I am constrained to so find because of the one hundred or more years that have elapsed since, at the instance of the State, the boundaries of the town were duly fixed to include the lands in question. I am the more convinced by reason of the fact that the town trustees have for over two hundred years exercised dominion of these lands without any question of the State authorities. That the opinions of the highest court of this State, in litigation relating to the construction of these patents and holding the legal title of the lands in question to vest in the trustees of the town of Brookhaven, were matters of public record known to the legal representatives of the plaintiffs, is worthy of note.

My conclusions, therefore, are:

(1) That the defendant Trustees of the Freeholders and Commonalty of the Town of Brookhaven acquired by the Nicolls patent and the Dongan patent and hold for the benefit of the people of the town the premises described in the complaint.

(2) That the acquiring of any rights of the Indians to the lands was not a condition precedent to the granting of the patent.

(3) That the Indians had no title.

(4) That under all the facts proven the State should not be allowed to prosecute this action.

(5) That under the rule of property the former decisions of the Court of Appeals, with relation to the title of the lands in question, and the validity and construction of the Nicolls and Dongan patents, should not be disturbed.

(6) That the complaint of the plaintiff should be dismissed upon the merits, with costs.